UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MARK D.,

                Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

Case No. 3:18-cv-05040-TLF

ORDER AFFIRMING DEFENDANT'S DECISION TO PARTIALLY DENY BENEFITS

Mark D. has brought this matter for judicial review of defendant's partial denial of his applications for disability insurance and supplemental security income (SSI) benefits. In a decision dated November 1, 2017, the ALJ found that plaintiff became disabled on February 1, 2013. AR 2374-76. The ALJ found that plaintiff was not disabled between December 24, 2010, and January 31, 2013. *Id.* Plaintiff appealed directly to this Court. Dkt. 4. The parties have consented to have this matter heard by the undersigned Magistrate Judge. 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73; Local Rule MJR 13. For the reasons set forth below, the undersigned affirms defendant's decision to deny benefits for the period between December 24, 2010 and January 31, 2013.

BACKGROUND

Plaintiff filed his first application for a period of disability and disability insurance benefits on November 2, 2007. Dkt. 8, Administrative Record (AR) 2358. He filed an application for SSI benefits on October 25, 2007. *Id.* In both applications, he alleged that he became disabled

ORDER AFFIRMING DEFENDANT'S DECISION TO
PARTIALLY DENY BENEFITS - 1

beginning March 1, 2006. *Id.* These applications were denied by the Social Security Administration initially and on reconsideration. *Id.*

Plaintiff's case has been through several rounds of appeal. A hearing was held in March 2010 before an administrative law judge ("ALJ"), who issued an unfavorable decision. *Id.* Plaintiff appealed the decision to this Court, and this Court remanded to the Appeals Council in August 2010. A second ALJ hearing was held in February 2011; the ALJ again issued an unfavorable decision; the plaintiff again appealed to this Court; and in February 2014 this Court again remanded. A third ALJ hearing was held in two parts, in November 2014 and March 2015. An ALJ again issued an unfavorable decision; plaintiff again appealed; and in February 2016 this Court remanded the case for a third time. *See* AR 2456.

On June 20, 2013, the plaintiff filed a subsequent SSI application. The responsible state agency issued a favorable determination, and the Appeals Council affirmed. AR 1889. The Social Security Administration thus found plaintiff disabled beginning June 20, 2013. AR 2359; *see* AR 1889, 2487.

On September 1, 2016, a fourth hearing was held before an ALJ, at which plaintiff appeared and testified, as did a medical expert, Don R. Clark, M.D. AR 2359. At the hearing and in a post-hearing brief, the plaintiff amended the alleged onset date of his disability to December 24, 2010. AR 2359, 2645.

In a November 2017 decision, the ALJ found that plaintiff became disabled on February 1, 2013. AR 2374-76. The ALJ found that plaintiff was not disabled between December 24, 2010, and January 31, 2013. *Id.* Plaintiff appealed directly to this Court. Dkt. 4.

In that decision, the ALJ resolved steps one and two of the five-step sequential analysis in plaintiff's favor. AR 2361-62. The ALJ found that the plaintiff had not engaged in substantial

gainful activity since the alleged onset of his disability and that he had the following severe impairments: affective disorder, anxiety disorder, and cognitive disorder not otherwise specified. AR 2362. The ALJ found that beginning on February 1, 2013, plaintiff also had severe impairments of hip arthritis and obesity, in combination. *Id.* The ALJ found, however, that plaintiff's lower extremity vascular condition was not a severe impairment. AR 2363.[1]

At step three, the ALJ found that during the relevant period the plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in the Social Security Administration's regulations. AR 2371. In assessing the plaintiff's residual functional capacity (RFC), the ALJ found that the plaintiff could perform work at a medium exertional level, with a number of additional limitations. AR 2371.[2] Because of this assessment of the plaintiff's RFC, the ALJ found that the plaintiff was not disabled during the relevant period because there were a number of jobs that exist in significant numbers in the national economy that he could have performed. AR 2374-75.

Plaintiff seeks reversal of the ALJ's decision and remand for an award of benefits for the period between December 24, 2010, and January 31, 2013. He alleges that the ALJ erred:

    (1)    in evaluating the evidence of plaintiff's edema (swelling in the lower legs); and

    (2)    in determining the onset date of plaintiff's disability.

For the reasons set forth below, the Court finds that the ALJ did not err in assessing plaintiff's edema at step two or in determining the onset date of his disability.

---

[1] The ALJ also found that plaintiff's vision impairment was not a severe impairment during the relevant period. AR 2362. Plaintiff does not challenge this finding. *See* Dkt. 12.

[2] Plaintiff does not challenge the ALJ's RFC finding apart from its failure to include limitations from edema. *See* Dkt. 12.

## DISCUSSION

The Court will uphold an ALJ's decision unless: (1) the decision is based on legal error; or (2) the decision is not supported by substantial evidence. *Revels v. Berryhill,* 874 F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017) (quoting *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988)). This requires "'more than a mere scintilla,'" though "'less than a preponderance'" of the evidence. *Id.* (quoting *Desrosiers*, 846 F.2d at 576).

The Court must consider the administrative record as a whole. *Garrison v. Colvin,* 759 F.3d 995, 1009 (9th Cir. 2014). The Court must weigh both the evidence that supports, and evidence that does not support, the ALJ's conclusion. *Id.* The Court may not affirm the decision of the ALJ for a reason the ALJ did not rely upon. *Id.* In the scope of its review, the Court considers only the reasons the ALJ identified. *Id.*

"If the evidence admits of more than one rational interpretation," the Court must uphold the ALJ's decision. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). That is, "[w]here there is conflicting evidence sufficient to support either outcome," the Court "must affirm the decision actually made." *Allen*, 749 F.2d at 579 (quoting *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971)).

I. **The ALJ's Evaluation of Evidence of Plaintiff's Edema**

Plaintiff challenges the ALJ's finding, at step two of the sequential evaluation process, that edema in his legs was not a severe impairment.

At step two, the ALJ must determine whether an impairment is "severe." 20 C.F.R. § 416.920. The step two inquiry is a *de minimis* screening device used to dispose of groundless claims. *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). An impairment or combination of

impairments can be found "not severe" only if the medical evidence clearly establishes a slight abnormality that has "no more than a minimal effect on an individual's ability to work." SSR 85-28, 1985 WL 56856 at *3 (1985); *see also Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988) (adopting SSR 85-28).

Step two "is not meant to identify the impairments that should be taken into account when determining the RFC." *Buck v. Berryhill*, 869 F.3d 1040, 1048-49 (9th Cir. 2017) (rejecting claim that ALJ erred after second hearing, where ALJ found new severe impairments but did not change RFC). An ALJ assessing a claimant's RFC before steps four and five "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" *Buck*, 869 F.3d at 1049 (citing Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims, Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *5 (S.S.A. July 2, 1996)). The RFC therefore "should be exactly the same regardless of whether certain impairments are considered 'severe' or not" at step two. *Id.* Thus, in many cases an error in not finding an impairment "severe" at step two is harmless. *See id.*; *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012).

Nonetheless, where an ALJ's error in not finding an impairment "severe" at step two causes the ALJ to improperly decline to consider that impairment in the RFC analysis and at steps four and five, the error can be harmful. *See Mercado v. Berryhill*, No. 16-CV-04200-BLF, 2017 WL 4029222, at *6 (N.D. Cal. Sept. 13, 2017) (distinguishing *Buck*).

Here, the ALJ declined to include limitations from edema in the RFC for the same reasons he found at step two that edema was not a severe impairment. AR 2372 ("For the reasons discussed at length at Finding #3 above, the medical record and other evidence indicates no severe physical impairments prior to February 2013 . . ."). Thus, any error in the ALJ's analysis

at step two affected the RFC assessment and so was not harmless. *See Mercado*, 2017 WL 4029222 at *6.

In this Court's prior remand, it held that substantial evidence did not support the previous ALJ's finding at step two that plaintiff's edema was not a severe impairment. The Court held that the ALJ erred in analyzing plaintiff's edema at step two because the ALJ failed to fully consider plaintiff's testimony on the subject (including his asserted reasons for not seeking treatment), failed to address certain relevant treatment records, and erred in finding a consultative examination by Mark Heilbrunn, M.D., irrelevant solely because it was "rendered retrospectively." The Court also held that the ALJ should have called a medical expert to establish an onset date. AR 2462-67.

On remand, the ALJ again found that plaintiff's "lower extremity vascular condition" (edema) was not a severe impairment. AR 2363-68. The ALJ found that, whatever their source, the symptoms plaintiff described "do not constitute a severe impairment because [they] did not meet the 12-month durational requirement." AR 2363-64 (citing SSR 82-52).

Plaintiff challenges the ALJ's step two analysis as improperly rejecting plaintiff's symptom testimony and the medical opinion of Don R. Clark, M.D. For the reasons discussed below, the ALJ did not err at step two and substantial evidence supports his finding.

*Plaintiff's Testimony*

Questions of credibility are solely within the control of the ALJ. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). The Court should not "second-guess" this credibility determination. *Allen v. Heckler*, 749 F.2d 577, 580 (9th Cir. 1984). In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. *See id.* at 579. Even if the reasons for discrediting a claimant's testimony

are properly discounted, that does not render the ALJ's determination invalid as long as that determination is supported by substantial evidence. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).

When gauging a plaintiff's credibility, an ALJ must engage in a two-step process. First, the ALJ must determine whether there is objective medical evidence of an underlying impairment that could reasonably be expected to produce some degree of the alleged symptoms. *Smolen v. Chater*, 80 F.3d 1273, 1281-1282 (9th Cir. 1996). If the first step is satisfied, and provided there is no evidence of malingering, the second step allows the ALJ to reject the claimant's testimony of the severity of symptoms if the ALJ can provide specific findings and clear and convincing reasons for rejecting the claimant's testimony. *Id.* To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." *Lester*, 81 F.3d at 834 (citation omitted). The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.*; *see also Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

Plaintiff testified about his lower-leg symptoms at three hearings. At his 2010 hearing, he stated that his legs were swollen all the time and that his doctor recommended that he elevate his legs for hours every day. AR 61-62. He testified that if he did not do so, his legs would throb and feel like they were "going to pop." AR 62.

At his 2011 hearing, plaintiff testified that edema was causing wounds in his lower legs, and the wounds had gotten infected. AR 108-09. He stated his doctor had advised him to elevate his legs; that he needed to elevate them every 15 minutes; and that he tried to keep them elevated all the time. AR 106, 113. At his 2014 hearing, plaintiff again testified that if he did not elevate his legs, he had severe pain and wounds. AR 1766-68, 1771-72.

In its latest remand, the Court reasoned that the ALJ erred in considering edema at step two in part because "[w]hile the ALJ found plaintiff's testimony not fully credible as a general matter, and this finding is not subject to review, she addressed plaintiff's venous insufficiency edema only at step two and did not thereafter address the testimony specifically associated with this condition." AR 2465.

On remand, the ALJ offered at least two clear and convincing reasons to discount plaintiff's testimony about his leg symptoms.[3]

First, the ALJ found plaintiff's testimony inconsistent with "his report and presentation in the medical record." AR 2364. In particular, the ALJ wrote: "[I]n marked contrast to the rather profound symptoms and limitations alleged by the claimant, the evidence indicates that, after January 2011, the lower extremity symptoms largely resolved or were well controlled such that the[y] caused little to no functional limitation." AR 2364.

Viewed in the context of "the overall diagnostic picture," this is a clear and convincing reason to discount a claimant's testimony. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014). Such a finding is supported here: The ALJ found that plaintiff's leg condition was improving at treatment visits in January 2011. AR 2364. The ALJ cited records that indicate that certain symptoms improved— in particular, a wound on plaintiff's heel and skin infection on the leg. AR 1559, 1568. These records support an inference that plaintiff's medical condition improved with treatment.

---

[3] The Commissioner asserts that the Court should ask whether the ALJ's conclusion regarding plaintiff's testimony was "'inherently incredible or patently unreasonable,'" citing a Ninth Circuit decision applying the National Labor Relations Act. Dkt. 13, p. 2 (quoting *Retlaw Broad. Co. v. Nat'l Labor Relations Bd.*, 53 F.3d 1002, 1005 (9th Cir. 1995)). This is not the standard the ALJ must meet in a social-security case. It is well established in the Ninth Circuit that absent affirmative evidence of malingering, an ALJ must give clear and convincing reasons, supported by substantial evidence, to reject a plaintiff's symptom testimony. *See Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017).

The ALJ's finding is further supported by objective observations by plaintiff's treatment providers during this period. Edema was noted in January 2011, when plaintiff was receiving treatment for wounds on his legs. AR 1564, 1567, 1569. Edema was noted in a May 2011 emergency room visit after a fall. AR 2275. But plaintiff did not present with edema again until February 2013. *See* AR 2238. In the only physical-exam notes between May 2011 and February 2013, plaintiff's primary care provider found no edema and plaintiff denied any complaints other than hip pain. AR 2246-48 (August 2012 treatment note).

The ALJ considered and discounted plaintiff's testimony that a fall in May 2011 was due to his leg symptoms. AR 2365-66. The ALJ observed that plaintiff did not report this as a cause of his fall at the time. AR 2271-75. Combined with the lack of other reports of symptoms during the period, the ALJ's finding was reasonable.

Plaintiff contends that the Ninth Circuit's decision in *Diedrich v. Berryhill*, 874 F.3d 634, 641 (9th Cir. 2017), precluded the ALJ from relying on a finding that plaintiff's testimony is inconsistent with treatment notes showing few expressions of pain or gait abnormalities. *See* Dkt. 12, p. 6; AR 2365. This case is distinguishable from *Diedrich*.

In the *Diedrich* case, the ALJ noted that in a single report an orthopedist did not observe symptoms of the claimant's mental health. 874 F.3d at 641. Here, mental-health providers at several visits over a period of two years did not note that plaintiff had to follow an extreme treatment regimen. *See* AR 2241-42, 2250, 2254, 2262, 2280, 2285. Those providers did record plaintiff's reports about his daily life, from physical activity to social interaction to substance use. *See* AR 2250, 2262, 2285. Unlike in *Diedrich*, it was not unreasonable for the ALJ here to expect some indication of the alleged symptoms in the mental-health providers' notes. *See Sample*, 694 F.2d at 642 (ALJ may draw inferences "logically flowing from the evidence").

Second, the ALJ found plaintiff's testimony inconsistent with "the type and frequency of treatment he obtained." AR 2364. This is also a clear and convincing reason to discount a claimant's testimony. *Burch v. Barnhart*, 400 F. 3d 676, 681 (9th Cir. 2005) ("That Burch's pain was 'not severe enough to motivate [her] to seek [these forms of] treatment,' . . . even if she sought some treatment, is powerful evidence regarding the extent to which she was in pain." [citation omitted]).

The record supports the ALJ's finding here. The ALJ emphasized the absence of any visits between January 2011 and September 2013 in which plaintiff sought "treatment specifically for swelling or other acute lower extremity vascular abnormalities." AR 2364. The ALJ observed that most notes from this period are from mental health and addiction treatment, which was not aimed at treating physical ailments. AR 2364-65. The ALJ drew a reasonable inference from this—that because "one would expect providers to observe abnormalities in the claimant's presentation at some point," the fact that they did not suggested that plaintiff's symptoms were not severe. AR 2364-65.

Plaintiff contends that the ALJ erred in failing to credit his testimony that he did not show signs of edema at treatment visits or seek specific treatment for that condition because he was successfully addressing his symptoms by wearing compression stockings and elevating his legs. *See* AR 2365. In the previous remand, the Court directed the ALJ to consider these explanations. AR 2465.

The ALJ complied with this instruction; on remand, the ALJ found that plaintiff's explanations "are not believable because such treatment recommendations are not reflected in the overall record discussed above." AR 2367. The record supports the ALJ's finding. Two treatment notes, from September and October 2010, recommended that plaintiff elevate his legs.

AR 1578, 1582. Those providers also recommended walking, exercising, wearing compression stockings, losing weight, using a diuretic, and following a low-sodium diet. *Id.* And those providers did not indicate that plaintiff needed to elevate his legs every 15 minutes, day and night, as plaintiff testified. *Id.*; *see* AR 114, 121-22, 1766-68, 1771-72.

Further, the ALJ's inference that plaintiff would have mentioned such an onerous medical requirement in his visits to health care providers during that period is a reasonable one. *See Greger v. Barnhart*, 464 F.3d 968, 972-73 (9th Cir. 2006) (ALJ may consider failure to report symptoms as basis for discounting claimant's allegations). Likewise, as noted above, observations in the treatment records are not consistent with such an extreme treatment measure. *See, e.g.*, AR 2248 ("no problem noted" for venous insufficiency), 2285-86 (plaintiff feeling "pretty good").

And third, the ALJ found plaintiff's testimony inconsistent with his activities. AR 2365-66, 2368. This also a clear and convincing reason to discount plaintiff's testimony. Plaintiff contends that the ALJ could not rely on his activities to discount his testimony because the record does not show that (1) his level of activity contradicts his testimony about a claimed limitation or (2) he was able to spend a substantial part of his day performing functions that are transferable to a work setting. *See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). But the ALJ did make the first type of finding here, and the record supports it.

Specifically, the record contains substantial evidence that plaintiff's activity level contradicted his testimony about the severity of his limitations. Plaintiff did not report limitations from lower-leg swelling edema during the relevant period. As the ALJ noted, plaintiff instead reported walking the dog, going to the gym, and swimming, AR 2262-67. Plaintiff testified that he had to elevate his legs "[a]lmost all day and night" and his legs began to hurt immediately

when he stood up. AR 1771. But he did some of these activities at a frequency that would clearly preclude elevating his legs every 15 minutes—such as going to the gym three days per week and flying to Florida twice—without reporting problems with pain to his mental-health providers. *See* AR 2262, 2264.

Plaintiff flew to Florida twice during the period. AR 1772-73. Plaintiff contends that "[w]ithout inquiring into the specifics of the trip, it was unreasonable [for the ALJ] to infer that it contradicted the medical or testimonial evidence." Dkt. 12, p. 9. Yet the ALJ did inquire about how many flights plaintiff made and whether he could elevate his legs during the flights. AR 1772-73. Plaintiff testified that he was not able to do so, although on at least one flight he was able to put his legs on a foot stool. *Id.* The ALJ could reasonably find a contradiction between plaintiff's testimony about needing to elevate his legs at almost all times and his ability to fly to Florida. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600–02 (9th Cir. 1999).

*Nonexamining Medical Source: Dr. Clark*

The ALJ also gave specific and legitimate reasons to discount the reviewing opinion of Don Clark, M.D., regarding the onset date of plaintiff's disability.

The ALJ must evaluate any medical opinion based on the factors in the SSA regulations, including: 1) the examining relationship; 2) the treatment relationship; 3) supportability; 4) consistency; and 5) specialization. *See* 20 C.F.R. § 404.1527(c); *Trevizo*, 871 F.3d at 675. In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).

An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." *Lester*, 81 F.3d at 830. An ALJ must still give specific and legitimate reasons to reject a nonexamining doctor's opinion, or significant parts of it. *See Shafer v. Astrue*,

518 F.3d 1067, 1069-70 (9th Cir. 2008) (holding that ALJ erred in failing to address nonexamining physician's opinion because this "contravened governing regulations requiring [the ALJ] to . . . evaluate every medical opinion received"); SSR 96–6p (ALJ "may not ignore" state agency medical consultant opinions "and must explain the weight given to these opinions in their decisions").

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Where the evidence is inconclusive, "questions of credibility and resolution of conflicts are functions solely of the [ALJ]." *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). Determining whether inconsistencies in the evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" medical opinions "falls within this responsibility." *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 603 (9th Cir. 1999).

Here, Dr. Clark testified that plaintiff's lower extremity vascular symptoms would have limited him to standing and walking for a total of three hours in an eight-hour workday. AR 2412-13. Dr. Clark stated that this limitation was from obesity and the strain it would place on plaintiff's knees and hips. AR 2412. He stated that because of plaintiff's edema he should walk rather than stand. AR 2413. Dr. Clark testified that although he did not see in the record that plaintiff's providers had recommended elevating his legs above his heart, it would be "the logical thing to do" to reduce swelling. AR 2414-15.

The ALJ gave specific and legitimate reasons to discount Dr. Clark's testimony about plaintiff's limitations and the onset of his disability, and substantial evidence supports those reasons. First, the ALJ found that "Dr. Clark failed to point to evidence in the record consistent with his opinion." AR 2370. The ALJ noted that although Dr. Clark pointed to a December 2010

record indicating one potential cause of leg symptoms (hypoalbuminemia), he did not point to any later records other than Dr. Heilbrunn's October 2013 evaluation and an August 2014 record. *Id.*; *see* AR 2411. The ALJ noted that "consistent with [the] medical record, [Dr. Clark] admitted that records prior to October 2013 show no evidence of any gait abnormality." AR 2370; *see* AR 2414. And the ALJ found that Dr. Clark's conclusion about plaintiff's limitations was inconsistent with his statement that he did not see any record of a provider recommending that plaintiff elevate his legs. *Id.*

This is a specific, legitimate, and supported reason to reject Dr. Clark's opinion. Dr. Clark stated that he based his testimony about the onset date of plaintiff's limitations on a record from December 28, 2010. AR 2410-11. He then testified that the record supported plaintiff's limitations up until the 2016 hearing. AR 2411. But other than stating, based on records from 2014, that plaintiff is still obese, Dr. Clark did not cite any evidence for his opinion. AR 2411-13. The ALJ was entitled to consider whether there was any factual support for Dr. Clark's opinion, including the medical evidence Dr. Clark presented, in determining how much weight to give that opinion. 20 C.F.R. § 404.1527(c)(3).

The ALJ also found that "Dr. Clark's opinion is markedly inconsistent with the treatment evidence" that the ALJ discussed in rejecting plaintiff's testimony. AR 2370; *see* AR 2364-67. The ALJ found that the evidence did not "reflect complaints, findings, treatment, or opinions consistent with the claimant['s] allegations or with significant functional limitations due to lower extremity abnormalities." AR 2370. As discussed above, substantial evidence supports these findings. Accordingly, this provided a specific and legitimate reason to discount Dr. Clark's nonexamining opinion. *See* 20 C.F.R. § 404.1527(c)(4) (ALJ must consider consistency with record as a whole in weighing medical opinion).

Finally, the ALJ found that Dr. Clark's opinion was, like plaintiff's testimony, not consistent with plaintiff's activities, such as long plane trips, walking the dog, regular exercise, and going to the gym three times a week. AR 2370. But because the ALJ offered two valid reasons to discount Dr. Clark's opinions, the Court does not reach this reason.

Plaintiff contends that the ALJ improperly substituted his opinion for that of Dr. Clark. Dkt. 12, pp. 9-10. Yet the ALJ did not review the same evidence as Dr. Clark and substitute his own, different conclusion for Dr. Clark's. The ALJ considered Dr. Clark's opinion, reviewed the record, and determined the weight of Dr. Clark's opinion. The ALJ gave specific and legitimate reasons to discount Dr. Clark's opinion. Accordingly, the ALJ did not err in rejecting Dr. Clark's testimony about plaintiff's limitations and their onset date.

II. **The ALJ's Determination of Plaintiff's Disability Onset Date**

Plaintiff also challenges the ALJ's determination of February 1, 2013, as the onset date of plaintiff's disability. *See* AR 2373-74. Because plaintiff also applied for disability insurance benefits, he asserts, the ALJ should have considered whether he was disabled before his date last insured, December 31, 2011. Dkt. 12, p. 12 (citing SSR 83-20). The one-year period before his application date did not start until June 20, 2012, however.

Plaintiff applied for both SSI and disability insurance benefits on June 20, 2013. In its previous remand, this Court found that the ALJ did not fully address evidence that was relevant to determining the onset date of plaintiff's limitations from edema.

In particular, the Court concluded that the ALJ's interpretation of Dr. Heilbrunn's October 2013 physical evaluation—that it was irrelevant to the period before June 20, 2013—was unreasonable. AR 2466. The Court noted that there was evidence of "ongoing symptoms associated with venous insufficiency edema just before and shortly after" June 20, 2013, the date plaintiff had been found disabled. AR 2466-67. Accordingly, the Court directed the ALJ to hear

testimony from a medical expert "to consider the evidence as a whole and to infer the date of disability onset." AR 2467.

In the decision at issue here, the ALJ found plaintiff disabled as of February 1, 2013. AR 2375. The ALJ found that on that date, plaintiff had new severe impairments—hip arthritis and obesity—and those conditions caused him to be disabled. AR 2362. But the ALJ found that plaintiff never had a severe impairment due to his "lower extremity vascular condition" that met the 12-month duration requirement, as "[t]he objective medical evidence indicates that the symptoms caused significant functional limitations for, at most, three months during the relevant period." AR 2363-64 (citing SSR 82-52).

Plaintiff points out that although the earliest a claimant can receive benefits for SSI is his application date, a claimant can receive disability insurance benefits for a period beginning as early as a year before the claimant's application date. Dkt. 12, p. 12; *see* SSR 83-20 ("[D]isability insurance benefits (DIB) may be paid for as many as 12 months before the month an application is filed."); *Armstrong v. Comm'r of Soc. Sec. Admin.*, 160 F.3d 587, 589 (9th Cir. 1998). Plaintiff contends that this means the ALJ should have considered whether his disability began before his date last insured, December 31, 2011. But, as noted above, the one-year period before plaintiff's application date did not start until June 20, 2012.

In any case, the ALJ did consider the period before plaintiff's application filing date. The ALJ found plaintiff disabled as of February 1, 2013. The ALJ determined before that, the evidence does not show functional restrictions amounting to disability. AR 2362.

Plaintiff appears to base his argument on the ALJ's interpretation of the medical record, not on the ALJ's application of the law regarding onset dates. *See* Dkt. 12, pp. 11-15. Thus, whether the ALJ erred in determining the disability onset date depends on whether the ALJ erred

in considering the medical evidence of plaintiff's functional limitations. In particular, plaintiff contends that the ALJ should have found that the limitations Dr. Heilbrunn found in October 2013 existed before February 1, 2013. Dkt. 12, p. 13. As noted above, this Court previously found that the ALJ erred in finding Dr. Heilbrunn's opinion irrelevant to that period solely because it was "rendered retrospectively." *See* AR 2465-66.

The ALJ remedied that error on remand, in discussing Dr. Heilbrunn's opinion and finding that "the complaints and objective findings in [the] treatment record prior to October 2013 do not suggest significant physical limitations until February 2013, when the claimant was diagnosed with hip arthritis" and "[l]ater notes through September 2013 indicate limitations due solely to hip arthritis." AR 2366. The record supports these findings. *See* AR 2215-16, 2237-39, 2271-75.

Because the ALJ did not err in determining plaintiff's disability onset date, February 1, 2013, that determination is affirmed.

## CONCLUSION

Defendant's decision to deny benefits is AFFIRMED.

Dated this 27th day of December, 2018.

Theresa L. Fricke
United States Magistrate Judge